SAO 91 (REV.5/85) Criminal Complaint　　　　　　　　　　　　　　　　AUSA Samuel B. Cole (312) 353-4258

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**
5-14-13
MAY 1 4 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

NALINI AHLUWALIA

MAGISTRATE JUDGE COX
**CRIMINAL COMPLAINT**

CASE NUMBER: 13 CR 0398

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: On or about August 23, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, NALINI AHLUWALIA, defendant herein:

> knowingly and willfully solicited and received a kickback in the amount of approximately $1,000 from Individual A in exchange for referring patients to Company A for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

in violation of Title 42, United States Code, Section 1320a-7b(b). I further state that I am a Special Agent with the U.S. Department of Health and Human Service, Office of Inspector General, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
RAUL SESE
Special Agent, U.S. Department of Health and Human Service,
Office of Inspector General

Sworn to before me and subscribed in my presence,

May 14, 2013　　　　　　　　　　　　　　　　at　　Chicago, Illinois
Date　　　　　　　　　　　　　　　　　　　　　　　City and State

SUSAN E. COX, U.S. Magistrate Judge
Name & Title of Judicial Officer　　　　　　　　　　Signature of Judicial Officer

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss |
| NORTHERN DISTRICT OF ILLINOIS | ) |

## AFFIDAVIT

I, RAUL SESE, being duly sworn, state as follows:

1. I am a Special Agent with the U.S. Department of Health and Human Service, Office of Inspector General, and have been so employed for 6 years. My current responsibilities include the investigation of white collar crime, and health care fraud in particular.

2. This affidavit is submitted in support of a criminal complaint alleging that NALINI AHLUWALIA has violated Title 42, United States Code, Section 1320a-7b(b). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging AHLUWALIA with receiving kickbacks for the referral of Medicare patients, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge and information provided to me by other law enforcement agents and from persons with knowledge regarding relevant facts.

4. My understanding and interpretation of recorded conversations set forth in this affidavit are based on my knowledge of the investigation to date and review of consensually

recorded conversations, the content and context of the conversations, prior and subsequent conversations, information provided by a confidential informant, the results of physical surveillance, conversations with other officers and agents, and my experience and familiarity with these types of investigations. The summaries of conversations do not include all potentially criminal conversations recorded during this investigation of AHLUWALIA and others, or all statements or topics covered during the course of the recorded conversations. The quoted material contained in the Affidavit is based on summaries of the recorded conversation and my own review of the audio and video and the review of other law enforcement personnel, not final transcripts.

I.  **The Medicare Program**

5.  The Department of Health and Human Services is an agency of the United States government. HHS's activities, operations, programs, and obligations are funded with federal monies. These programs include the Health Insurance for the Aged and Disabled Program, commonly known as Medicare. Medicare provides free or below-cost health care benefits to certain eligible beneficiaries, primarily persons who are sixty-five years of age and older, and is a Federal health care program pursuant to Title 42, United States Code, Section 1320a-7b(f).

6.  The Centers for Medicare and Medicaid Services, also called CMS, is a federal agency within the Department of Health and Human Services. CMS administers the Medicare program and contracts with public and private organizations, usually health

insurance carriers, to process Medicare claims and perform administrative functions. CMS currently contracts with Palmetto GBA to administer and pay Part A claims from the Medicare Trust Fund, which is a reserve of monies provided by the federal government.

7. Medicare Part A helps pay for medically necessary home health and hospital care. Medicare authorizes payment for home health care only if the care was actually provided and was medically necessary, that is, the services were required because of disease, disability, infirmity, or impairment. Medicare will not pay for services and treatment that were not actually provided or for which that patient did not meet the criteria necessary to justify the claimed service or treatment.

8. Under Home Health Care Medicare Part A, a patient is eligible for coverage if a patient is homebound. In general, a patient is homebound when an illness or injury restricts his ability to leave his place of residence except with the aid of supporting devices or if he has a condition which is such that leaving his home is medically contraindicated.

9. The Medicare Home Health Care Program requires that prior to submitting a claim for reimbursement for a home health service, the claimant-home health care provider must assess the patient, including the severity of a patient's symptoms, and the reimbursement rate to the home health care provider.

10. Medicare typically approves home health care for a 60-day period of time. The 60-day periods are referred to as cycles. An initial cycle of home health care is known as a start of care. Medicare requires that a physician certify that a patient needs home health

services and further requires that a physician complete a plan of care for the patient. After the start of care cycle, a patient must be recertified by a physician to receive additional 60-day cycles of home health care. These new cycle(s) are known as recertifications.

## II. The Federal Anti-Kickback Statute

11. Title 42, United States Code, Section 1320a-7b(b)(1)(a) prohibits, among others, health care providers, including medical doctors, from soliciting or receiving kickbacks in exchange for the referral of Medicare and other federally-insured beneficiaries for covered services. Specifically, the statute provides in pertinent part:

> Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony.

12. Under the federal anti-kickback statute, among other things, it is illegal to knowingly and willfully solicit money or remuneration of any sort from home health care companies in exchange for the referral of a patient for home health care services for which payment may be made under Medicare.

## BACKGROUND OF THE INVESTIGATION

13. The Confidential Informant worked at a home health care company located in the Chicago area ("Company A"). The CI has admitted to paying kickbacks to medical doctors in exchange for the referral of Medicare patients to Company A. The CI is cooperating with the FBI, HHS, and the U.S. Attorney's Office in this and other

investigations in hopes of achieving a more favorable result with respect to his own potential criminal liability.

14. As part of a related investigation, the CI was identified as an individual involved in paying kickbacks to a physician in exchange for that physician's referral of patients to Company A. When initially approached by agents on or about August 23, 2012, the CI was briefly taken into custody and then released, and I know of no other arrests of the CI. When interviewed by agents that day, CI first denied but later admitted that s/he had paid kickbacks in exchange for the referral of Medicare patients to Company A. S/he has denied paying kickbacks to certain other groups of physicians, but the government is still investigating this possibility. The CI then agreed to cooperate with the government on a limited basis.

15. During the August 23, 2012, interview, the CI stated that s/he had previously made kickback payments to a medical doctor named NALINI AHLUWALIA. The CI said that AHLUWALIA had an office on the north side of Chicago and that he had paid her $400 or $500 per patient in exchange for her referral of Medicare patients to Company A. The CI did not provide law enforcement with specific information on the exact amounts or dates of the payments. The CI told agents that s/he had last paid AHLUWALIA earlier in 2012. The CI further stated that AHLUWALIA had called the CI several months before and asked the CI to come see her, which the CI understood to mean that AHLUWALIA was seeking further

5

kickback payments. The CI told agents that s/he owed AHLUWALIA $1000 for her referring two patients, later determined to be Patient A and Patient B.

### A. The August 23, 2012, $1000 Kickback Payment

16. Later on August 23, 2012, and at the direction of agents, the CI met with AHLUWALIA at AHLUWALIA's office on the north side Chicago. Prior to the meeting, agents searched the CI's person and vehicle for cash or contraband, with negative results. Agents then outfitted the CI with hidden audio/video recording devices and activated the devices. Agents further provided the CI with $1000 in cash for the CI to pay AHLUWALIA.

17. As reflected in the audio/video recording, during the meeting, the CI and AHLUWALIA discussed what date AHLUWALIA should place next to her signature on the Medicare home health re-certification forms for Patient A and Patient B. Medicare requires that a physician re-certify after each 60-day cycle of home health care that the patient continues to require home health care. The recording shows the CI and AHLUWALIA discussing that the Patient A re-certification form should be dated July 15 and the Patient B certification form should be dated July 22. CI then handed AHLUWALIA an envelope and told her "This is for two patients." AHLUWALIA then asked the CI in a whisper, "A thousand?" She then asked, "This is for the patients?" The CI responded, "Two. There were two," referring to two patients.

18. After the meeting, the CI provided agents with two Medicare home health certification forms related to Patient A and Patient B that the CI stated that AHLUWALIA

had signed during the meeting. The form for Patient A was dated July 15, 2012, and the form for Patient B was dated July 22, 2012.

## B. The October 9, 2012, $500 Kickback Payment

19. On October 9, 2012, the CI met with AHLUWALIA at AHLUWALIA's office in Chicago for the purpose of making another $500 kickback payment to AHLUWALIA for the re-certification for home health care of Patient A. Prior to the meeting, agents searched the CI's person and vehicle for cash or contraband. Agents found that the CI had $264 in his/her pocket. Agents then outfitted the CI with hidden audio/video recording devices and activated the devices. Agents also provided the CI with $500 in cash for use in paying a kickback to AHLUWALIA.

20. The audio/video recording shows the CI and AHLUWALIA discussing what date AHLUWALIA should place next to her signature on the Medicare home health re-certification form for Patient A. The recording shows the CI and AHLUWALIA discussing whether to date the form September or October with the CI finally instructing AHLUWALIA to use a date of "ten two." The re-certification form provided to agents by the CI after the meeting with AHLUWALIA contains AHLUWALIA's signature next to a date of October 2, 2012.

21. The CI told agents after meeting with AHLUWALIA that s/he paid AHLUWALIA $500 during the meeting. Cash can be seen in AHLUWALIA's hands in the video of the meeting. However, the CI's meeting with AHLUWALIA was interrupted by

another individual who appears to hand AHLUWALIA cash. Because of this, it is difficult to tell from the video whether the cash seen in AHLUWALIA's hand comes from the CI or this second person.

22. Following the meeting, the CI met agents at a predetermined meeting area. Agents recovered the audio/video recording devices from the CI. Agents then searched the CI and the CI's vehicle for money and contraband, finding that the CI had $264 in his/her pocket. The CI also provided agents with paperwork related to Patient A, as noted above.

### C. The February 12, 2013, $500 Kickback Payment

23. On February 12, 2013, the CI again met with AHLUWALIA at AHLUWALIA's medical office in Chicago for the purpose of making another $500 kickback payment to AHLUWALIA for the re-certification for home health care of Patient A. Prior to the meeting, agents searched the CI's person and vehicle for cash or contraband. Agents found that the CI had $32 in his/her pocket. Agents then outfitted the CI with hidden audio/video recording devices and activated the devices. Agents also provided the CI with $500 in cash for use in paying a kickback to AHLUWALIA.

24. As reflected in the audio/video recording, during the meeting, AHLUWALIA asks the CI, "What is the truth or not? . . . Some guy like you said FBI was there and all his calls were recorded. . . . Some people say he's just taking money from you." The CI then asks AHLUWALIA, "Who?" AHLUWALIA does not provide an answer. AHLUWALIA then

8

mentions "$100,000 cash . . . this is recorded . . . keep it low." AHLUWALIA later tells the CI, "Just be careful."

25. The audio/video recording further shows that during the meeting, at one point the CI said "$500" and then the video shows AHLUWALIA with cash in her hand, which she appears to put in her pocket. The video further reflects AHLUWALIA reviewing what appears to be at least one Medicare home health certification form.

26. Following the meeting, the CI met agents at a predetermined meeting area. Agents recovered the audio/video recording devices from the CI. Agents then searched the CI and the CI's vehicle for money and contraband, finding that the CI had $32 in his/her pocket. The CI told agents that he had made the $500 kickback payment to AHLUWALIA and he provided agents with a Medicare home health certification form for Patient A, which s/he indicated was signed by AHLUWALIA during the meeting. The form was dated November 18, 2012.

**D. AHLUWALIA Admitted She Took Kickbacks**

27. Agents interviewed AHLUWALIA at her medical office after the CI left her office on February 12, 2013. AHLUWALIA said that she had just received $500 from the CI in exchange for a patient referral. She further stated that she understood that providing money in exchange for patient referrals was illegal. During the meeting, AHLUWALIA voluntarily provided to agents the $500 she received from the CI, and law enforcement agents verified that the serial numbers of the bills AHLUWALIA provided to agents matched the serial numbers of the cash that agents had provided the CI for payment to AHLUWALIA.

9

### E. The Medicare Data Shows That AHLUWALIA Treated Patients A and B and that Company A Provided Them with Home Health Care

28. Medicare claims data shows that AHLUWALIA submitted claims for physician services she rendered to Patient A from at least approximately April 2010 through 2012, and for Patient B from at least approximately March 2011 to August 2012. Medicare data further shows that Company A billed for at least ten episodes of care for home health services for Patient A from November 2010 to December 2012, and two episodes of care for Patient B between November 2011 and August 2012.

### III. Conclusion

29. Based on the foregoing, I believe there is probable cause that on or about August 23, 2012, NALINI AHLUWALIA solicited and received a $1000 kickback in exchange for the referral of Medicare beneficiaries to a home health care agency, in violation Title 42, United States Code, Section 1320a-7b(b).

FURTHER AFFIANT SAYETH NOT.

_____
RAUL SESE
Special Agent, U.S. Department of Health and Human Service, Office of Inspector General

SUBSCRIBED AND SWORN to before me on May 14, 2013

_____
SUSAN E. COX
United States Magistrate Judge